IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Wabash National Corporation, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 4:22-cv-23 |
| v. | ) ) ) |
| Certain Underwriters at Lloyds, London, | ) ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, Wabash National Corporation ("Wabash"), by and through its attorneys, Dickinson Wright PLLC, and for its Complaint against Defendants, Certain Underwriters at Lloyd's London ("Underwriters"), states as follows:

## THE PARTIES

1. Wabash is a Delaware for-profit corporation with its principal place of business located in Tippecanoe County, Indiana.

2. Underwriters at Lloyd's, London, Syndicates 1225 AES, 2001 AML, 2987 BRIT, 2003 XLC, 1274 AUL, 1414 ASC and 033 HIS; Liberty Mutual Insurance Europe SE, ILU 4018; and Markel International Ins. Co. Ltd., ILU 3622017 are underwriters subscribing to Cargo Stock Throughput Policy B1510MA000009E (the "Policy"). (A true and correct copy of the Policy is attached as Exhibit A.) The Underwriters are authorized to underwrite and insure risks in Indiana and have a principal place of business outside the United States. The Underwriters are not domiciled in the State of Indiana and have no participating members domiciled in the State of

Indiana or who are citizens of the State of Indiana. The Underwriters underwrite risk and offer a wide range of insurance coverages and policy types.

## JURISDICTION AND VENUE

3. The Underwriters have substantial business contacts with Indiana and have continuous and systematic contact with the State through the issuance of insurance policies in Indiana and to Indiana entities and through communications, contacts, and interactions with Indiana citizens, corporations, and public entities relating to insurance policies, coverage, indemnification, and defense of claims among other business purposes. Through the Policy, the Underwriters have agreed to "submit to the jurisdiction of a Court of competent jurisdiction within the United States." (*See* Policy, p. 15 (Service of Suit Clause (U.S.A.)).)

4. Wabash, along with its associated, affiliated, and subsidiary companies, as described in more detail below, is an insured under the Policy.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Wabash and the Underwriters, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

6. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because the alleged events and activities on which this action is based occurred in the Northern District of Indiana, and the Underwriters are subject to personal jurisdiction in the Northern District of Indiana with respect to this action.

**Factual Background**

**I.   The Policy and Relevant Terms**

7. The period of the policy extends from June 1, 2019 through June 1, 2020. Exhibit A, Page 2 of 31.

8. The Policy defines the Insured as follows:

> **Wabash National Corporation** and/or Associated and/or Affiliated and/or Interrelated and/or Subsidiary Companies and/or Corporations as they now are or may hereafter be created and/or constituted and/or acquired and/or for whom the Insured receive instructions to insure and/or for whom the Insured have or assume a responsibility to arrange insurance, whether contractually or otherwise, as their respective rights and interests may appear hereinafter known as the Insured. Exhibit A, Page 2 of 31 (original emphasis).

9. The Policy defines the Interest of the Insured to include as follows:

> On Goods and/or Merchandise of every description consisting principally of but not restricted to truck trailers **and custom equipment and/or all other interests including raw materials and semi-finished goods handled by the Insured in the court of their business and/or in the care, custody and control of the Insured** whether in transit (including domestic and internal transits) or store or elsewhere anywhere in the World – shipped in and/or over. Further, including Increased Value whether by reason of liability for and/or payment of freight and or [sic] duty and/or any other charges on arrival or otherwise. Exhibit A, Page 3 of 31 (emphasis added).

10. The Policy defines its Limits as: USD 105,000,000 any one loss any one Location and/or Conveyance. Exhibit A, Page 3 of 31.

11. The Policy defines Deductibles, in relevant part, at Exhibit A, Page 3 of 31, as follows:

> USD 250,000 each and every loss, event or Occurrence but;
> …
> USD 10,000 any one loss any one chassis up to a maximum of USD 250,000 any one loss in respect of Customer Chassis at sites in Lafayette, Indiana.

12. The Policy's Duration of Cover Clause provides, in relevant part, that:

> The insurance hereunder attaches from the time the subject matter becomes at the Insured's risk or the Insured assumes interest anywhere in the world and continues whilst the subject matter is in transit and/or in store or elsewhere including during delays within or beyond the Insured's control

and **including whilst held as stock including whilst undergoing processing, assembly, manufacture**, renovation, reconditioning, servicing or repair and/or on exhibition, whether or not in the court of transit, and further including any interest held for the purpose of packing and/or preparation and/or consolidation and/or deconsolidation and until finally delivered to intended final destination and/or the Insured's responsibility ceases anywhere in the world, irrespective of terms of purchase and/or sale. Exhibit A, Page 8 of 31 (emphasis added).

13. The Policy's Notice of Loss clause provides that:

    Loss or damage which may become a claim under this Insurance shall be advised to Insurers as soon as practicable after it becomes known to the person whoever is responsible for purchasing this insurance policy. Failure of the Insured to report said loss or damage within a reasonable time shall not invalidate any claims under this insurance. Exhibit A, Page 12 of 31.

14. The Policy's Sue and Labour clause provides that:

    It is agreed that in case of actual or imminent loss, damage, cost or expense, it **shall be lawful and necessary for the Insured, their Factors and Assigns, to sue, labour and travel for, in and about the defence, safeguard and recovery of the interests insured hereunder, or any part thereof, or to incur such other expenses as are reasonable and/or necessary for the purpose of reducing or attempting to reduce any potential loss or liability under this Contract without prejudice to this Insurance**, and subject always to the terms, conditions, limitations, and exclusions of this Insurance, the charges thereof shall be borne by the Insurers. It is further agreed that no acts of the Insurers or the Insured in recovering, saving or preserving the interests insured shall be considered as a waiver or acceptance of abandonment. The Insurers hereon agree to pay the charges described above in addition to amounts otherwise recoverable hereunder, subject however to the applicable limits of this insurance as contained herein or endorsed hereto, which would operate so as to restrict the amount of such charges payable by the Insurers hereon. Exhibit A, Page 15 of 31 (emphasis added).

15. The Policy's Choice of Law provision establishes that Indiana law governs any disputes arising under the Policy. Exhibit A, Page 17 of 31.

## II. The Claim

16. Wabash, through a wholly-owned subsidiary, operates a facility (the "Supreme Facility") where truck bodies are assembled.

17. At the Supreme Facility, Wabash typically and routinely maintains truck cabs ("Cabs") and truck chassis ("Chassis") in various states of completeness on the way to becoming a completed truck body.

18. On June 1, 2019, strong hailstorms struck the Supreme Facility and surrounding area. These storms caused significant damage to Cabs and Chassis in various states of completion, as well as completed truck bodies and other vehicles that were under the care of Wabash and stored at the Supreme Facility for service, completion, and repair (the "Loss").

19. Immediately following the storms, in an effort to reduce any damages related to the Loss, Wabash undertook efforts to make repairs to the Cabs, Chassis, and completed truck bodies in order to mitigate any slowdown to its customers.

20. Wabash provided credits to its customers and retained various third party providers to complete repairs at a cost of approximately $1,800,000.00 (the "Repair Cost"). Of the Repair Cost, approximately $1,500,000.00 went to repair certain Chassis (the "Chassis Cost"), and the remainder went to repair or offset the damage to Cabs and other completed truck bodies (the "Other Cost").

21. On June 6, 2019, Wabash gave notice of the Loss to its insurance broker, Woodruff Sawyer & Co. ("Woodruff"). Upon information and belief, Woodruff, in turn, then notified all of Wabash's relevant insurance providers of the Loss.

22. Wabash coordinated with Woodruff for the purchase of the Policy. Because the Policy is provided through Lloyds' of London, Woodruff coordinated with a British broker,

GAWS of London ("GAWS"), to complete the issuance of the Policy. Upon information and belief, Woodruff provided GAWS with notice of the Loss.

23. Through other insurance providers, Wabash has been reimbursed for approximately $500,000.00 of the Repair Cost.

24. Wabash then and now presents a claim against the Underwriters for the remainder of the Repair Cost, or approximately $1,300,000.00, under the terms of the Policy (the "Claim").

25. The Underwriters have not provided a formal response to Wabash's tender of the Claim. The Underwriters have, however, informally indicated that they will deny any coverage obligation to Wabash.

26. Under the Policy's Interests of the Insured clause, the Underwriters agreed to provide coverage for the entirety of Wabash's Interests, including raw materials and semi-finished goods handled by Wabash in the course of its business and/or under its care, custody and control. (Exhibit A, Page 3 of 31.) This, of course, includes not only the Cabs or completed truck bodies, but also Chassis, which are semi-finished goods (*i.e.*, a portion of a completed truck body).

27. Moreover, the Policy contains a specific deductible for Chassis, making clear that Chassis are covered under the Policy. (Exhibit A, Page 3 of 31.)

28. Thus, once the entirety of the remainder of the Repair Cost is considered, the Claim is well in excess of the Policy's $250,000.00 deductible. (Exhibit A, Page 3 of 31.)

29. Wabash and the Underwriters disagree as to the interpretation of the terms of the Policy and the existence of coverage for the Claim.

## Count I – Declaratory Judgment

30. Wabash restates and re-alleges paragraphs 1-29, inclusive, as though fully set forth in this paragraph 30.

31. An actual controversy exists as to the scope of Wabash's rights and the Underwriters' obligations under the Policy.

32. This Court has the authority to "declare rights, status, and other legal relations" as to the named parties under Indiana's Declaratory Judgment Act. *See* Ind. Code § 34-14-1-1.

33. Here, the Policy provides Wabash with indemnification coverage for the alleged facts and circumstances set forth regarding the Claim.

34. A failure to timely pay the Loss will cause harm to Wabash as long as the remaining portion of the Repair Cost is unpaid.

35. This declaratory judgment action is necessary and useful in determining all of the rights and responsibilities of the parties.

Wherefore, Wabash respectfully requests that this Court enter a judgment in favor of Wabash and against the Underwriters, declaring that the Policy provides coverage for Wabash's Claim and that the Underwriters' denial of coverage is improper; ordering the Underwriters to pay Wabash all amounts owed pursuant to the terms of the Policy; and awarding Wabash all other compensatory, consequential and other damages to which it may be entitled, including, but not limited to, attorneys' fees and expenses incurred in bringing this action to enforce the Policy; and all other and further relief as this Court may deem proper.

## Count II – Breach of Contract

36. Wabash restates and re-alleges paragraphs 1-29, inclusive, as though fully set forth in this paragraph 36.

37. The Policy constitutes a valid and enforceable contract between Wabash and the Underwriters.

38.  Wabash provided prompt notice of its losses, performed all obligations required of it under the Policy, and/or was ready, willing, and able to perform its obligations under the Policy at all times.

39.  Under the terms of the Policy, the Underwriters are required to pay Wabash's losses as described herein.

40.  The Underwriters have not paid any amount to Wabash in connection with Wabash's Claim, and Wabash reasonably believes that the Underwriters do not intend to do so, which is a breach of the Policy.

41.  As a direct result of the Underwriters' breach, Wabash has suffered and continues to suffer damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest.

Wherefore, Wabash respectfully requests that the Court enter judgment in its favor and against the Underwriters on Wabash's breach of contract in a damage amount to be determined at trial, plus consequential damages, attorneys' fees, pre- and post-judgment interest, and for all other further relief as the Court may deem just and equitable.

Respectfully Submitted,

**Wabash National Corporation**

By: /s/ Joseph R. Delehanty
Its Counsel

Dickinson Wright PLLC
Joseph R. Delehanty (IN 31275-49)
55 West Monroe, Suite 1200
Chicago, Illinois 60603
(312) 641-0060
jdelehanty@dickinson-wright.com